## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MZM CONSTRUCTION COMPANY, INC., d/b/a MZM CONSTRUCTION MANAGEMENT & TRANSPORTATION,<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY BUILDING LABORERS' STATEWIDE BENEFIT FUNDS,<br><br>Defendants. | Civ. No. 18-16328-KM-MAH<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.**:

Pending before the Court is a motion for an indicative ruling filed by defendant New Jersey Building Laborers' Statewide Benefit Funds ("Funds"). (DE 19). In this declaratory judgment action, plaintiff MZM Construction Company, Inc. ("MZM"), a subcontractor, seeks to preclude arbitration and void a short form agreement ("SFA") that allegedly incorporated a statewide collective bargaining agreement ("CBA") by reference.

A preliminary word about the backwards procedural posture of this case: The cases governing arbitrability, cited herein, are commonly decided in the context of a motion to compel arbitration brought by the party who seeks it. This action, however, seeks a preemptive declaratory judgment that arbitration should *not* occur, and is brought by the party opposing arbitration. Because arbitration had been scheduled, MZM was thrown back on the expedient of seeking a preliminary injunction against arbitration. The Court was thereby called upon to assess the likelihood of success on the merits; the "merits," however, related only to the likelihood that the claims were arbitrable. The injunction application, then, was the functional equivalent of an opposition to a motion to compel arbitration by the Funds. The preliminary injunction granted by the Court consists of little more than obedience to the Third Circuit's command that arbitration cannot be ordered unless and until antecedent

questions of fact are resolved. *Guidotti v. Legal Helpers Debt Resolution*, L.L.C., 716 F.3d 764, 771 (3d Cir. 2013). In declaratory judgment actions, it is sometimes helpful to notionally realign the parties in their natural configuration. At any rate, however, the standards governing arbitrability do not depend on who sued first, and, *mutatis mutandis,* must be applied in the same manner to a motion to compel or a declaratory judgment action.

MZM sought a preliminary injunction to stop an arbitration hearing that had been unilaterally scheduled by the Funds. The Funds argued that MZM was delinquent on contributions that were due under a CBA, and that MZM had agreed to arbitrate that issue based on an arbitration clause in that CBA. In an oral ruling, I granted the preliminary injunction staying the arbitration pending further factual development. The Funds' appeal from that order is pending before the U.S. Court of Appeals for the Third Circuit.

The Funds request that this Court issue an order, pursuant to Federal Rule of Civil Procedure 62.1, indicating that, if the matter were remanded from the Court of Appeals, this Court would provide relief from, or reconsider, its December 19, 2018 Order that (1) preliminarily enjoined arbitration; (2) denied the Funds' motion to dismiss the complaint because the arbitrability issue required further factual development; and (3) ordered expedited discovery. (DE 16). The Funds seek relief from a "final judgment or order" under Federal Rule of Civil Procedure 60(b) and for reconsideration under Rule 54(b). For the reasons provided below, the motion will be denied.

## I.     Background[1]

In 1992, Marjorie Perry and two partners founded plaintiff MZM Construction Company, Inc. ("MZM"), a subcontractor headquartered in Newark, New Jersey. (Perry Decl. ¶¶1-4). MZM is a construction firm that specializes in construction and construction management, waste management and transportation, and renovations. (Perry Decl. ¶3). MZM has performed work on the New Jersey Performing Arts Center, MetLife Stadium, Newark International Airport, and New Jersey Transit facilities. (Perry Decl. ¶4). In 1994, Perry became the sole shareholder of MZM. (Perry Decl. ¶2).

Over the years, MZM has used union laborers when directed to do so by a project owner or general contractor on a particular project. (Perry Decl. ¶6). In such a case, Perry would contact the representatives of the union and request the number of laborers needed for the project. (Perry Dec. ¶7). On those projects, Perry would pay the union rates as well as benefits. (Perry Decl. ¶7). This pattern of dealing between Perry and the unions started in 1992 and continues to the present day. (Id.).

Even though Perry used union laborers from time to time, she did not execute a collective bargaining agreement with the unions. (Id.). In 2002, however, Perry signed a one-page "Short Form Agreement" ("SFA"). (Perry Decl. ¶9). MZM was working on Terminal C at Newark Liberty Internal Airport and was utilizing union laborers for the project. (Id.). That project began in 2001

---

[1]     Certain key items from the record will be abbreviated as follows:

DE __ = Docket entry number;

Cplt. = MZM's complaint (DE 1);

DBr = Defendant Funds' brief (DE 19-1);

Kemple Decl. = November 30, 2018 Declaration of Kimberly Kemple (DE 10-3);

PBr = Plaintiff MZM's opposition brief (DE 22);

Perry Decl. = Nov. 19, 2018 Declaration of Marjorie Perry (DE 1-3);

Reply = Defendant Funds' reply brief (DE 23);

1T = December 18, 2018 transcript of hearing (DE 15).

and was completed in 2004. (*Id.*). In 2002, Perry was approached by a union representative, Joe Taylor. (*Id.*). Perry had dealt with Taylor for many years. (*Id.*). Taylor told Perry that he needed her to sign a one-page document for the ongoing Newark Airport job because "the union had nothing on record for MZM for the Newark Airport job." (*Id.*). Taylor understood that MZM was an "open shop," and did not indicate that he wanted Perry to sign an ongoing collective bargaining agreement. (*Id.*). Taylor orally advised Perry that the agreement was "a single project agreement" for the Newark Airport job only. (*Id.*). Taylor also told Perry that if Perry did not sign the agreement, "the union would not provide any more laborers for the Newark Airport job." (*Id.*).

The 2002 SFA, which makes no mention of arbitration, provides as follows:

> The undersigned Employer, desiring to employ laborers from the New Jersey Building Laborer Local Unions and District Councils affiliated with the Laborer's International Union of North America, hereinafter the "Unions," and being further desirous of building, developing and maintaining a harmonious working relationship between the undersigned Employer and the said Unions in which the rights of both parties are recognized and respected, and the work accomplished with the efficiency, economy and quality that is necessary in order to expand the work opportunities of both parties, and the Unions desiring to fulfill the undersigned Employer's requirements for such laborers, the undersigned Employer and Unions hereby Agree to be bound by the conditions as set forth in the 1999 Building, Site and General Construction Agreement, which Agreement expires April 30, 2002, and the successor Agreement to the 1999 Building Site and General Construction Agreement, herein referred to as the 2002 Building, Site and General Construction Agreement, which successor Agreement becomes effective May 1, 2002, both of which Agreements are incorporated herein as if set forth in full.

(DE 1-4). MZM was identified as the employer in the agreement, and Perry signed as MZM's authorized representative. (*Id.*).

Relying on Taylor's representations, and to avoid any labor interruptions on the Newark Airport project, Perry signed the agreement. (Perry Decl. ¶9). Taylor did not provide Perry with a copy of the 2002 SFA. Perry did not have

any further communications with the union regarding the 2002 SFA until approximately sixteen years later, in 2018. (Perry Decl. ¶¶11-12). Between 2002 and 2018, seventy percent or more of MZM's projects in New Jersey were non-union jobs for which no contributions were paid or sought by the Funds. (Perry Decl. ¶15).

In 2018, the accountants for the Funds requested access to MZM's "books and records," which Perry granted. (Perry Decl. ¶12). On June 27, 2018, the Funds' accountant told Perry that she owed "contributions on a non-union job that was completed in 2016, which was a federal prevailing wage project." (*Id.*). In response, Perry requested a copy of the document that the Funds' accountant relied upon in claiming that fringe benefits were owed. (Perry Decl. ¶13).

The Funds' accountant produced a copy of the 2002 SFA. (*Id.*). Shortly thereafter, the Funds also provided Perry with a copy of a Collective Bargaining Agreement between the "Employer" and "the Building Laborers' District Councils and Local Unions of the State of New Jersey ('Union')." That CBA says it covers a term beginning May 1, 2002 and ending April 30, 2007, with automatic renewal provisions. (DE 1-5 (hereinafter "2002 CBA"); *see also* Perry Decl. ¶16). This 2002 CBA is not signed by anyone. It does not identify a contractor or employer on the signature line. (2002 CBA at p.69). Prior to receiving this copy of the 2002 CBA in 2018, Perry had never before seen this or any other CBA to which MZM was a signatory. (Perry Decl. ¶18). MZM essentially asserts that no additional payment is due because it was not a signatory to any CBA with the Funds.

The 2002 CBA requires the (unspecified) "Employer" to "remit fringe and benefit contributions to the Funds." (Kemple Decl. ¶5; 2002 CBA §14.00-14.90). As part of its opposition to MZM's motion before this Court, the Funds submitted a number of "Employer Contribution Reports," from May of 2012 and March through July of 2016. (Kemple Decl. ¶14, & Ex. 7). Those reports, above Perry's signature on behalf of MZM, provide the following:

> THE UNDERSIGNED, an authorized representative of the above
> Employer, hereby agrees, on behalf of the Employer, to bind the
> Employer to all the provisions, terms and conditions of . . . the
> Collective Bargaining Agreement by and between the Building
> Construction Laborers' District Councils and Local Unions of the
> State of New Jersey and the Building, Site and General
> Construction Contractors and Employers, which Agreements and
> Declarations of Trusts and Collective Bargaining Agreements (the
> Agreements) are incorporated herein by reference.

(*Id.*). That provision is not contained in all the reports, and it does not mention arbitration. Where it does appear, the font size of the provision is much smaller as compared to the other text in the reports. Additionally, each report is for a specific time period,[2] identifies a particular "jobsite," and provides contributions for a particularly named employee. (*Id.*).

On November 5, 2018, counsel for the Funds sent a demand letter to MZM. (DE 1-7). That letter stated that MZM owed $231,650.65 in contributions, including interest and audit fees, and that the failure to submit payment would cause the Funds to submit the matter to arbitration on Tuesday, November 27, 2018. (*Id.*). The Funds assert that the 2002 SFA incorporated the 2002 CBA by reference and that therefore the matter is arbitrable. (Kemple Decl. ¶3).[3]

The 2002 CBA does not contain a single, broad arbitration clause, but instead, provides two distinct arbitration provisions, one for jurisdictional and the other for non-jurisdictional disputes.

The CBA's first arbitration provision (§2.20), titled "Jurisdictional Disputes," provides the following:

> It is agreed between the Union and the Employer that this
> Agreement is applicable to all construction work that is described
> in this Agreement or the Manual of Jurisdiction of the Laborers'

---

[2]  For example, the first report in the exhibit is for May 13, 2012 through May 19, 2012. (Kemple Decl., Ex. 7).

[3]  The Funds also assert that after the 2002 CBA expired, successive CBAs governed the parties' relationship: first, from May 1, 2007 through April 30, 2013 ("2007 CBA"); second, from May 1, 2013 through April 30, 2016 ("2013 CBA"); and third, from May 1, 2016 through present ("2016 CBA"). (Kemple Decl. ¶4).

International Union of North America, which is incorporated herein by reference and any other work within the recognized and traditional jurisdiction of the Union and shall be performed in accordance with the terms of this Agreement. If the Union is aggrieved over any assignment, the matter shall be referred to the regional office of both contesting Unions in an effort to seek a resolution. If the matter fails to be satisfactorily resolved in this manner within three business days, the parties agree to submit the matter to the New Jersey State Board of Mediation for binding arbitration on an expedited basis. Any party that fails to abide by and cooperate with this expedited procedure shall be deemed to be in default and an order shall be entered by the Arbitrator in favor of the opposing party. Pending an orderly resolution of the matter, there shall be no interruption of work by a work stoppage, strike or refusal to refer men to the project by the Union.

(2002 CBA, §2.20). This provision appears to cover disputes between unions over the assignment of work. *See Office & Prof'l Emples. Int'l Union v. Sea-Land Serv., Inc.*, 210 F.3d 117, 118 (2d Cir. 2000) ("a jurisdictional labor dispute arises when two or more unions claim, under their respective collective bargaining agreements ... the right to perform the same work assignment." (citing *Transportation-Communication Emp. Union v. Union Pac. Railroad*, 385 U.S. 157, 161 (2000))).

The CBA's second arbitration provision (2002 CBA, §21.20), covering non-jurisdictional disputes, provides for a three-step grievance procedure, the third step of which is arbitration. This grievance procedure governs all "questions or grievances" that involve the "interpretation and application" of the 2002 CBA, "or any grievance concerning any term or condition of work." (2002 CBA, §21.20; *see also* 2002 CBA §24.10 ("Any conflict in the interpretation of this agreement not settled directly by the Employer and the local Union shall be submitted to the Building Contractors Association of New Jersey and the Laborers' International Union of North America, Eastern Region office . . . for resolution. . . . If the foregoing parties fail to agree as to a resolution of the dispute, the dispute shall be subject to the grievance and arbitration procedure herein.")).

The CBA states that it incorporates by reference the "Agreements and Declarations of Trust for the Funds" ("Trust Agreements"). (Kemple Decl. ¶6). The Trust Agreements provide that if an employer is in default, the Trustees "may take any action necessary or appropriate to enforce payment of the contributions, interest, damages, and expenses provided for herein, including, but not limited to, proceedings at law or in equity." (Kemple Decl., Ex. 3, Article V, §4). The Trust Agreements further provide that the "Fund and Trustees shall not be required to exhaust any grievance or arbitration procedure provided by a Collective Bargaining Agreement or otherwise with respect to the enforcement of such Employer obligations, but rather shall have immediate access to the courts, as provided under applicable law, or to designate a permanent arbitrator to hear and determine collection disputes." (*Id.*).

On November 20, 2018, MZM filed suit in this Court and moved for a temporary restraining order and preliminary injunction to stay an arbitration hearing which the Funds had unilaterally scheduled for November 27, 2018. (*See* Cplt.). MZM's complaint alleges two causes of action. The first count, under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, asserts that MZM is not a party to or bound by the 2002 CBA, and is not required to arbitrate under the 2002 CBA. (Cplt. ¶¶49-67). The second count alleges fraud in the execution, in that Perry signed the 2002 SFA without knowledge or a reasonable opportunity to obtain knowledge of the agreement's essential terms (which were incorporated from elsewhere). (Cplt. ¶¶68-89).

The November 27, 2018 arbitration was adjourned on consent, and the Court heard oral argument on the preliminary injunction application on December 12, 2018. (DE 15). The Court issued an Order, dated December 19, 2018, preliminarily enjoining the arbitration and ordering expedited discovery as to whether this matter is arbitrable. (DE 16).

The preliminary injunction, as I say, was in the nature of a stay pending resolution of factual issues. The Court determined that a preliminary injunction would "preserve the status quo" and that denial would have effectively "grant[ed] the relief that one side wants." (1T36:12-16). On the first

factor for a preliminary injunction, likelihood of success on the merits of the arbitrability question, there was substantial evidence that Perry was not informed as to "the scope of what she was signing or realize that she was entering into a wide-ranging agreement that would extend into the indefinite future and a broad variety of jobs as opposed to just the one she was on at the time of 2002." (1T36:19-25). The passage of time since 2002, and a course of dealing that did not include enforcement of the agreement, suggested that the parties did not believe that they were entering into an ongoing CBA. (1T37:1-5). Additionally, fraud in the execution, a fact-dependent issue, required further development. (1T37:6-10).

Forcing arbitration on a party who had not entered into an agreement to do so made the second factor, irreparable harm, weigh in favor of MZM. (1T37:13-18). In weighing the parties' respective interests, the only harm to the Funds, in the event that the claims were determined to be arbitrable, was further delay. (1T37:17-23). The public interest factor did not weigh in favor of either party. (1T38:3-7).

The Court granted the preliminary injunction, temporarily halting arbitration to allow development of a factual record so the arbitrability issue could be decided on a complete record at the summary judgment stage or tried, if necessary. (1T38:8-39:13). The Court stressed that its decision on the preliminary injunction was not a prejudgment of the merits. (1T39:22-24).

On December 20, 2018, the Funds filed a Notice of Appeal of this Court's December 19, 2018 Order. (DE 17). On February 8, 2019, the Funds filed the motion for an indicative ruling under Federal Rule of Civil Procedure 62.1, and for relief under Rules 54(b) and 60(b), that is now before the Court. The Funds essentially argue that the Court should reverse its preliminary injunction ruling based on "newly discovered" evidence, a ruling which would moot the Funds' appeal. (DE 19-2). The alleged newly discovered evidence is another SFA executed by Perry, dating from October 1999. (*Id.*). In substance, this 1999 SFA is similar to the 2002 SFA:

> The Undersigned Contractor or Employer, desiring to employer laborers from the Building Laborer Local Unions and District Councils affiliated with the Laborers International Union of North America and being further desirous of building, developing and maintaining a harmonious working relationship between the undersigned contractor and the Building Laborers Local Unions and District Councils of New Jersey in which the rights of both parties are recognized and respected, and the work accomplished with the efficiency, economy and quality that is necessary in order to expand the work opportunities of both parties, and the Building Laborers Local Unions and District Councils of New Jersey desiring to fulfill the Undersigned Contractor's requirements for such laborers, the Undersigned Contractor and the Building Laborers Local Unions and District Councils of New Jersey hereby agree to be bound by the terms and conditions as set forth in the Building, Site and General Construction Agreement by and between the Building Laborer Local Unions and District Councils of New Jersey and various Building, Site and General Construction Contractors and Employers which Agreement is incorporated herein as if set forth in full.

(1999 SFA, DE 19-2). Perry signed this 1999 SFA as MZM's principal. (*See id.*).[4]

The Funds contend that this 1999 SFA "substantially reduces" the likelihood of success on MZM's claims. (DE 19-2, ¶7). The Funds proffer that this evidence was not produced earlier because records that predate 2001 are kept "off-site." (DE 19-2).

## II. Standard

### A. Indicative ruling under Fed. R. Civ. P. 62.1

The parties seem to agree, or assume, that the Funds' pending appeal of the preliminary injunction deprives the Court of all jurisdiction to dissolve the injunction until the Court of Appeals returns jurisdiction to this Court. The situation is not quite so straightforward.

---

[4] Even though the Funds argue that "successive" CBAs governed the parties' relationship after the term of the 2002 CBA expired, *see* n.3, *supra*, the newly submitted document contains a "Trade Agreement History," which list the "start" and "end" date of three trade agreements that were "signed" by Perry. The first agreement started in 5/1/1999 and ended 4/30/2002; the second agreement was in effect from 5/1/2002 to 4/30/2007; and the third was in effect from 5/1/2016 to 4/30/2019. (DE 19-2). The third agreement has a "received" date of 1/17/2019.

Generally speaking, "[t]he filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *see also Kull v. Kutztown Univ. of Pa.*, 543 F. App'x 244, 248 (3d Cir. 2013). In such circumstances, the district court is prohibited from taking any action that would divest the appellate court of its jurisdiction. *Ortho Pharm. Corp. v. Amgen, Inc.*, 887 F.2d 460, 462-63 (3d Cir. 1989).

The court need not, however, lash itself to the mast and resign itself to foundering on the shoals of an ill-advised or obsolete ruling. Federal Rule of Civil Procedure 62.1 provides that when a motion is made for relief that the district court lacks authority to grant due to a pending appeal, the court may "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1. According to the Advisory Committee Notes, this Rule "applies only when those rules deprive the district court of authority to grant relief without appellate permission. If the district court concludes that it has authority to grant relief without appellate permission, it can act without falling back on the indicative ruling procedure."

The Third Circuit has noted that "a motion to modify an injunction can, at least in some circumstances, be heard during the pendency of an appeal over which the court of appeals will retain jurisdiction." *Ortho Pharm. Corp.*, 887 F.2d at 463; *see also N.J. Sports Prods. v. Don King Prods.*, 15 F. Supp. 2d 546, 550 (D.N.J. 1998) ("Under Fed. R. Civ. P. 65, when a Court issues an 'order involving injunctive relief . . . prior to the entry of a final judgment[,] . . . an appeal from the grant or denial of [the] preliminary injunction does not divest the trial court of jurisdiction or prevent it from taking other steps in the litigation while the appeal is pending." (alterations in original)).

Relying on Fed. R. Civ. P. 62,[5] the Third Circuit has noted that the district court retains some injunctive powers even during the pendency of an appeal from an injunction. *See Ortho Pharm. Corp.*, 887 F.2d at 463. That Rule provides as follows:

> **(d) Injunction Pending an Appeal**. While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

Fed. R. Civ. P. 62(d).

Such relief would seem particularly suited to the context of a preliminary injunction, as injunctions, though appealable, are always subject to modification based on changed circumstances. *See Ortho*, 887 F.2d at 463 ("Certainly, absent some change in circumstances, a movant ought not to be able to file a motion under the aegis of Fed. R. Civ. P. 62(c) and relitigate the 'original issue' simply because the case involves preliminary injunctive relief."); *see also Favia v. Ind. Univ.*, 7 F.3d 332, 337 (3d Cir. 1993) (noting that modification of injunction is proper only when there has been a change of circumstances between entry of injunction and filing of motion that would "render the continuance of the injunction in its original form inequitable"). Additionally, "in an appeal from an order granting or denying a preliminary injunction, a district court may nevertheless proceed to determine the action on the merits." *United States v. Price*, 688 F.2d 204, 215 (3d Cir. 1982) (citation omitted).

### B. Preliminary injunction

In order to obtain a preliminary injunction, the moving party must show the following:

---

[5] The Rule cited in *Ortho Pharm. Corp.* as Fed. R. Civ. P. 62(c) has been re-designated as Rule 62(d). *See* 887 F.2d at 463.

> (1) a reasonable probability of eventual success in the litigation,[6]
> and (2) that it will be irreparably injured . . . if relief is not granted.
> . . . [In addition,] the district court, in considering whether to grant
> a preliminary injunction, should take into account, when they are
> relevant, (3) the possibility of harm to other interested persons
> from the grant or denial of the injunction, and (4) the public
> interest.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (alteration in original; footnote added) (quoting *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)). The movant bears the burden of establishing "the threshold for the first two 'most critical' factors . . . . If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179.

The decision to grant or deny a preliminary injunction is within the Court's discretion. *See Am. Express Travel Related Servs., Inc. v. Sidamon—Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). The primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cty.*, 40 F.3d 645, 647 (3d Cir. 1994).

### C. Standards to compel arbitration

The principal issue on the preliminary injunction application, acknowledged by both sides, was whether MZM should be required to arbitrate based on the 2002 SFA's incorporation by reference of the 2002 CBA, which contained an arbitration provision.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, creates a strong federal policy in favor of arbitration. *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178-79 (3d Cir. 1999) (noting that FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to

---

6       In this context, again, "eventual success" means a party's success in compelling or resisting an arbitral forum, as opposed to prevailing on the substantive claims for delinquent contributions to the Funds.

arbitrate disputes."). To achieve that aim, the FAA authorizes a party to enforce a valid arbitration agreement by moving to compel arbitration. 9 U.S.C. §§ 2-4; *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012). "Despite the liberal policy in favor of enforcing arbitration agreements . . . , a party cannot be forced to arbitrate unless 'that party has entered into a written agreement to arbitrate that covers the dispute.'" *U.S. Small Bus. Admin. v. Chimicles*, 447 F.3d 207, 209 (3d Cir. 2006) (quoting *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999)).

Arbitration is a matter of contract between parties, so a judicial mandate to arbitrate must be predicated on the parties' consent. *Guidotti v. Legal Helpers Debt Resolution*, L.L.C., 716 F.3d 764, 771 (3d Cir. 2013) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). When a district court is presented with a motion to compel arbitration, the Court must first determine whether the agreement to arbitrate is valid, and then decide whether the dispute falls within the agreement's scope. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009).

Additionally, "the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts "apply ordinary state-law principles that govern the formation of contracts." *Id.* at 944.

Under New Jersey law, "the law presumes that a court, not an arbitrator, decides any issue concerning arbitrability." *Morgan v. Sanford Brown Inst.*, 225 N.J. 289, 304 (2016); *see also N.J. Reg'l Council of Carpenters v. Jayeff Constr. Corp.*, 495 F. App'x 230, 232 (3d Cir. 2012) ("[T]he issue is whether a contract to arbitrate was ever entered into by the parties. In such a case, the court—not the arbitrator—has the power to adjudicate the issue."). To overcome this presumption, an arbitration clause must contain "'clea[r] and unmistakabl[e]' evidence 'that the parties agreed to arbitrate arbitrability.'" *Id.* (alterations in

original) (quoting *First Options*, 514 U.S. at 944); *see also AT&T Techs., Inc. v. Commun's Workers*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). "Silence or ambiguity in an agreement does not overcome the presumption that a court decides arbitrability." *Id.* at 1178.

In deciding whether to compel arbitration, the Court applies a standard similar to that of a summary judgment motion, and some discovery may be necessary. *Griswold v. Coventry First LLC,* 762 F.3d 264, 270 (3d Cir. 2014) (citing *Kaneff v. Del. Title Loans*, 587 F.3d 616, 620 (3d Cir. 2009)); *see also Quilloin v. Tenet Healthsys. Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012); *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980). When the issue of arbitrability is not apparent on the face of the complaint, "the motion to compel arbitration must be denied pending further development of the factual record." *Guidotti*, 716 F.3d at 774. "[A] restricted inquiry into the factual issues [may] be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate, and the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." *Id.* (internal citations and quotations omitted).

If summary judgment is not warranted in light of material factual disputes regarding an agreement's enforceability, a court should then proceed to trial "regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions." *Guidotti*, 716 F.3d at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). The U.S. Court of Appeals for the Third Circuit has explained:

> Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue

of fact concerning the formation of the agreement should the court
decide as a matter of law that the parties did or did not enter into
such an agreement.

*Par-Knit Mills*, 636 F.2d at 54.

Therefore, arbitration will be enforced only where "there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a); *see Quilloin*, 673 F.3d at 228.
Furthermore, "in reviewing the record, we are required to view the facts and
draw inferences in the light most favorable to the nonmoving party." *Quilloin*,
673 F.3d at 228 (citation and internal quotation marks omitted).

### III.  Relief from a final order under Fed. R. Civ. P. 60(b)

The Funds request relief under Federal Rule of Civil Procedure 60(b) on
the basis of newly discovered evidence, consisting of the 1999 SFA. The Funds
also argue that the 1999 SFA contradicts the sworn declaration of Perry, and
that therefore relief under Rule 60(b)(3) is warranted based on fraud or
misconduct.

Federal Rule of Civil Procedure Rule 60(b) authorizes the Court to issue
relief from a final judgment, order, or proceeding. "The general purpose of Rule
60(b) . . . is to strike a proper balance between the conflicting principles that
litigation must be brought to an end and that justice must be done." *Coltec
Indus., Inc. v. Hobgood*, 280 F.3d 262, 271 (3d Cir. 2002) (citing *Boughner v.
Sec'y of Health, Educ., & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978)). The
movant under Rule 60(b) "bears a heavy burden." *Plisco v. Union R. Co.*, 379
F.2d 15, 17 (3d Cir. 1967), *cert. denied*, 389 U.S. 1014 (1967). Rule 60(b) relief
is "extraordinary relief which should be granted only where extraordinary
justifying circumstances are present." *Id.*; *see also Moolenaar v. Gov't of the
Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir. 1987).

Rule 60(b)(2) provides that "[o]n motion and just terms, the court may
relieve a party or its legal representative from final judgment, order, or
proceeding for the following reasons: . . . newly discovered evidence that, with
reasonable diligence, could not have been discovered in time to move for a new

trial under Rule 59(b)." The party requesting such relief "bears a heavy burden" which requires "more than a showing of the potential significance of the new evidence." *Compass Tech., Inc., v. Tseng Laboratories, Inc.*, 71 F.3d 1125, 1130 (3d Cir. 1995). Rule 60(b)(3), also invoked by the Funds, provides relief where the opposing party has engaged in "fraud" or "misconduct."

Crucially, this Rule is limited to "final" judgments. *See* Fed. R. Civ. P. 60. "[T]here is an interdependence between the 'finality' required for Rule 60(b) and section 1291."[7] *Torres v. Chater*, 125 F.3d 166, 168 (3d Cir. 1997); *see also Penn West Assocs., Inc. v. Cohen*, 371 F.3d 118 (3d Cir. 2004) ("Rule 60(b) must be limited to review of orders that are independently 'final decisions' under 28 U.S.C. § 1291"). A final decision is "one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 160 (3d Cir. 2004) (quotations and citations omitted).

By definition, an order on a preliminary injunction is interlocutory. 28 U.S.C. § 1292(a)(1) (permitting appellate "interlocutory" review of orders "granting, continuing, modifying, refusing or dissolving injunctions[.]"); *DeJohn v. Temple Univ.*, 537 F.3d 301, 308 (3d Cir. 2008); *see GMC v. New A.C. Chevrolet,* 263 F.3d 296, 311 n.3 (3d Cir. 2001) (recognizing preliminary injunction as "non-final"); *see also Holber v. Portnoy*, 2018 U.S. Dist. LEXIS 50219, at *4 (E.D. Pa. Mar. 27, 2018) (holding preliminary injunction not "final" because order did "not end the litigation on the merits."); *Glendora v. Malone*, 165 F.R.D. 42, 43 (S.D.N.Y. 1996) ("This court's January 23 order

---

[7]    Title 28, U.S. Code, section 1291 confers appellate jurisdiction over appeals from final decisions of the district courts:

> The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

It is to be contrasted with 28 U.S.C. § 1292, which permits an appeal from interlocutory injunctive orders.

denying plaintiff's application for a temporary restraining order and preliminary injunction is certainly not a final order."); *Pipkin v. JVM Operating, L.C.*, 197 B.R. 47, 52 (E.D. Tex. 1996) (preliminary injunction order not final). Notably, the Funds' briefing recognizes as much. (DBr at 8 "Motions to Reconsider Interlocutory Orders"; Reply at 6-9)).

Thus, there is a threshold requirement under Rule 60(b) that the order at issue be "final." This Court's oral decision of December 19, 2018 is by no means a "final" order. The Order did not dispose of all of MZM's claims, but merely froze the status quo to permit the Court to resolve such claims. Therefore, the Rule 60(b) finality requirement is not satisfied.

Even if the Court's December 19, 2018 Order had been "final," the Funds would fail the test of due diligence. Rule 60(b)(2) applies where newly discovered evidence is "(1) material and not merely cumulative, (2) could not have been discovered prior to trial through the exercise of reasonable diligence, and (3) would probably have changed the outcome of the trial." *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991) (citing *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983); *Ulloa v. City of Phila.*, 692 F. Supp. 481, 483 (E.D. Pa. 1988)). Newly discovered evidence "within the meaning of Rule 60(b)(2) is evidence 'of which the aggrieved party was excusably ignorant' at the time of trial" and could not have been discovered with the exercise of due diligence. *Plisco v. Union R. Co.*, 379 F.2d 15, 16 (3d Cir. 1967) (citation omitted); *see also Beloff*, 950 F.2d at 930.

By way of a certification from their attorney, the Funds proffer that the 1999 SFA was stored "offsite" in its archives and was recovered "too late" for the preliminary injunction hearing. (DBr at 19). Obviously, the 1999 document was in the Funds' possession and the Funds were aware at all times that their pre-2001 documents were stored "offsite." *Cf. Jordan v. Am. Suzuki Motor Corp.*, 2007 WL 3231651, at *4 n.1 (S.D. Miss. Oct. 30, 2007) ("Certainly the bare minimum of diligence necessary under Rule 60(b)(2) requires a party to be familiar with documents that are in its own possession.").

The Funds have not presented any evidence that the document was unusually inaccessible. They have not provided a certification from a person with knowledge that the process of obtaining a document from "offsite" is particularly labor- or time-intensive. *See State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 178 (2d Cir. 2004) (affirming denial of a motion under Rule 60(b)(2) because defendants offered no explanation for their failure to discover newly-proffered document in their own files); *Alred v. Fed. Express Corp.*, 112 F. App'x 420, 422 (6th Cir. 2004) (denying Rule 60(b)(2) motion where party was in possession of document, did not display due diligence, and evidence was "unauthenticated.").

Regarding Rule 60(b)(3) in particular, I see no proof of fraud or misconduct. It is worth noting that the Funds vociferously take MZM to task for not producing or citing a twenty-year-old document, drafted and maintained by the Funds, of which the Funds themselves claim excusable ignorance.

Accordingly, the extraordinary relief provided by Rule 60(b) is unwarranted in this case.

### IV.    Reconsideration under Fed. R. Civ. P. 54(b)

The Funds also argue that reconsideration is warranted under Fed. R. Civ. P. 54(b). (DBr at 8-10).

#### A. Standard

Reconsideration is an extraordinary remedy that is to be granted "very sparingly." L. Civ. R. 7.1(i) cmt. 6(d); *Friedman v. Bank of Am., N.A.*, 2012 WL 3146875, at *2 (D.N.J. Aug. 1, 2012). The Local Rules require that the movant specify "the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." *See Egloff v. New Jersey Air Nat'l Guard*, 684 F. Supp. 1275, 1279 (D.N.J. 1988). Evidence or arguments that were available at the time of the original decision will not support a motion for reconsideration. *Damiano v. Sony Music Entm't, Inc.*, 975 F. Supp. 623, 636 (D.N.J. 1997); *see also North River Ins. Co.*, 52 F.3d at 1218; *Bapu Corp. v.*

*Choice Hotels Int'l, Inc.*, 2010 WL 5418972, at *4 (D.N.J. Dec. 23, 2010) (citing *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001)).

Motions for reconsideration in this district must adhere to the time limits of Local Civil Rule 7.1(i), which provides: "[u]nless otherwise provided by statute or rule (such as Fed. R. Civ. P. 50, 52 and 59), a motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge."

With all of that said, as to an interlocutory order with ongoing effect, the court nevertheless retains a good deal of discretion: "'[S]o long as [a] district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.'" *In re Anthanassious*, 418 F. App'x 91, 95 (3d Cir. 2011) (alteration in original) (quoting *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973)).

That discretionary authority is recognized in Rule 54(b), which provides, in pertinent part, as follows:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

Thus, until a decision is final, "a trial judge has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result." *In re Anthanassious*, 418 F. App'x at 95 (alteration added) (quoting *Swietlowich v. Bucks Cnty.*, 610 F.2d 1157, 1164 (3d Cir. 1979)); *see also In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 438-39 (3d Cir. 2009). However, the court must "exercise this authority in a responsible way, both procedurally and substantively" and "[e]ffective trial court management

requires a presumption against reconsideration of interlocutory decisions." *In re Anthanassious*, 418 F. App'x at 95 (alteration added).

I address the timeliness and then the merits of the motion.

## B. Timeliness

Considered as a motion for reconsideration, this motion is untimely. The Order was signed December 19, 2018, and entered on the docket on December 20, 2018. (DE 16). The Funds' motion for reconsideration was filed February 8, 2019, well beyond the fourteen days mandated by Local Civil Rule 7.1(i). (DE 19); *see Smith v. Manasquan Bank*, 2018 U.S. Dist. LEXIS 73854, at *3 (D.N.J. Apr. 27, 2018) (denying motion filed six days out of time) (citing *Testa v. Hoban*, 2017 U.S. Dist. LEXIS 81941, at *17-18 (D.N.J. May 30, 2017) (denying motion filed thirty-seven days out of time)); *Zitter v. Petruccelli*, 2017 U.S. Dist. LEXIS 69692, at *3 (D.N.J. May 8, 2017) (denying motion for reconsideration filed twenty-eight days after order was entered); *see also Tucker v. I'Jama*, 404 F. App'x 580, 581 (3d Cir. 2010) (affirming district court's decision to deny motion for reconsideration as untimely); *Batista v. United States*, 377 F. App'x 145, 147 (3d Cir. 2010) (same).

Considered as a motion under Rule 54(b), however, timeliness is not an issue. Because the order is interlocutory—*i.e.,* it does not finally dispose of the issues—the court retains the discretion to alter it.

## C. Merits of motion

I therefore move to the merits of the motion under Rule 54(b). The Funds' assert that the SFA(s) incorporated the CBA by reference, and that the CBA contains an arbitration clause. Notably, the SFAs themselves do not mention arbitration. At the very outset of the case, without discovery and with the issue of arbitrability to be viewed in the light most favorable to MZM, it was appropriate to enter a preliminary injunction that did no more than preserve the status quo and put off arbitration pending development of the pertinent facts.

And factual issues there are. In terms of incorporation by reference of a CBA, a court may find that a non-signatory is bound by a CBA where "(1) a writing that clearly refers to the CBA and (2) conduct of the defendant that 'evidences an intent to be bound by the [CBA] despite a lack of written consent.'" *N.J. Reg'l Council of Carpenters*, 495 F. App'x at 233 (citing *Residential Reroofers Local 30-B Health & Welfare Fund v. A & B Metal & Roofing, Inc.*, 976 F. Supp. 341, 344 (E.D. Pa. 1997)). The parties' course of dealing may also be relevant. In determining whether an employer's course of conduct binds the employer to the applicable CBA, courts have examined, "whether the defendant-employer: (a) remitted fringe benefit contributions and union dues; (b) paid union scale wages, as opposed to varying wages; (c) hired non-union workers, in addition to union workers, to perform work covered by the CBA; and (d) voluntarily submitted to an audit by the Funds." *Fiorentino v. Bricklayers & Allied Craftworkers Local 4 Pension Plan*, 2016 U.S. Dist. LEXIS 135657, at *54-55 (D.N.J. Sep. 30, 2016) (citations omitted), *aff'd*, 696 Fed. App'x 594 (3d Cir. June 6, 2017).

Under New Jersey law, "'[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law.'" *James v. Global Tel*Link Corp.*, 852 F.3d 262, 265 (3d Cir. 2017) (quoting *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 99 A.3d 306, 312-13 (2014)). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." *Atalese*, 219 N.J. at 442. This principle is especially important in arbitration cases "because arbitration involves a waiver of the right to pursue a case in a judicial forum" and courts will therefore "take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent." *Id.* (internal quotations omitted).

Before a separate document will be deemed to be incorporated by reference into a contract, New Jersey requires a high degree of certainty:

> In order for there to be a proper and enforceable incorporation by
> reference of a separate document, the document to be incorporated

22

must be described in such terms that its identity may be ascertained beyond doubt and the party to be bound by the terms must have had "knowledge of and assented to the incorporated terms."

*Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn*, 410 N.J. Super. 510, 533 (App. Div. 2009) (quoting 4 Williston on Contracts § 30:25 (Lord ed. 1999)), *certif. denied*, 203 N.J. 93 (2010); *see also James*, 852 F.3d at 266. That principle suggests that the Court can find an agreement to arbitrate only if (1) the SFAs describe the CBA in such a way that it is clear that they were incorporated into the SFAs; and (2) Perry, on behalf of MZM, knew of, and assented to, the terms of the CBA, where the arbitration clause is to be found.

MZM denies that those prerequisites are met. Somewhat more aggressively, MZM challenges the formation of the contract by arguing fraud in the execution. "To prevail on a defense of fraud in the execution, a party must show 'excusable ignorance of the contents of the writing signed.'" *Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992) ((quoting *Southwest Admins., Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986)). "Fraud in the execution arises when a party executes an agreement with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." *Rozay's Transfer*, 791 F.2d at 774 (quoting J. White & R. Summers, Uniform Commercial Code § 3-305(2)(c) (2d Ed. 1980)). A party claiming fraud in the execution must show that he "signed an instrument that is radically different from that which [he] is led to believe that he is signing." *Connors v. Fawn Min. Corp.*, 30 F.3d 483, 491 (3d Cir. 1994).

In deciding the preliminary injunction application, it was clear to the Court that there were issues of fact that needed to be explored in discovery. The existence of another, still earlier SFA does not necessarily move the needle. *See Jayeff Constr. Corp. v. Laborers' Int'l Union of N. Am.*, 2012 U.S. Dist. LEXIS 104872, at *10-11 (D.N.J. July 27, 2012) (determining after bench trial that "[m]ultiple signed short form agreements supports the Court's conclusion that the parties intended to enter project specific agreements.").

Here, it is undisputed that MZM is not a signatory to the CBA itself. At the preliminary injunction stage, the Court was unable to determine as a matter of law, that the SFA validly incorporated the CBA, and indeed there was considerable evidence that it was not. *Cf. Nieves v. Lyft, Inc.*, 2018 U.S. Dist. LEXIS 90423, at *34 n.9 (D.N.J. May 31, 2018) (denying motion to dismiss contract claim because plaintiff alleged that he "had no knowledge" of the terms of incorporated document and thus could not assent to its terms where signed agreement did not "did not recite terms," provide a "link" to, or attached the incorporated document "as an addendum.").

The Funds argue in effect that there is an equivalent, parallel incorporation-by-reference argument to be made with respect to the newly discovered 1999 SFA. I note, however, that the Funds have not provided the Court with a copy of the CBA that was in effect at the time the 1999 SFA was executed. Thus it is not even established that the 1999-era CBA, whatever that may have been, contained an arbitration clause like the one in the 2002 CBA. Again, the Funds excoriate MZM for failing to abide by an agreement, which is likely in the Funds' possession if it is anywhere, which the Funds themselves have not described or produced.

I am not moved to reconsider. There were, and still are, several disputed facts that suggest that the parties did not intend to incorporate the CBA. The union representative told Perry that the SFA was a single-project agreement; the union did not attempt to enforce the 2002 SFA/CBA until 2018, sixteen years after the SFA was executed; and, after signing the 2002 SFA, MZM openly worked on non-union projects within the jurisdiction of the local unions. These facts suggest a course of dealing under which *both* parties acted as if they believed that the SFA was not meant to bind MZM to an ongoing CBA. *See N.J. Reg'l Council of Carpenters*, 495 F. App'x at 234 (concluding that conduct did not evince intent to be bound by CBA where contractor "never signed CBA; it contributed to the funds on behalf of five individuals only after those individuals requested that it do so; and all other individuals employed by [contractor] were non-union employees." (citing *Bricklayers Local 21 of Ill.*

*Apprenticeship & Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 767-68 (7th Cir. 2004) (concluding employer was bound by CBA after examining numerous factors including evidence that the employer "took no action to challenge jurisdiction after the Joint Arbitration Board found it guilty of labor violation charges under the CBA"))); *Jayeff Constr. Corp.*, 2012 U.S. Dist. LEXIS 104872, at *14-15 (concluding, after bench trial, that SFA did not bind contractor where union did not seek to enforce SFA "until two years after its execution," and contractor continued to work on "non-union construction projects" within jurisdictions of local unions); *Joseph W. Davis, Inc. v. Int'l Union of Operating Engineers, Local 542*, 636 F. Supp. 2d 403, 417 (E.D. Pa. 2008) (denying summary judgment where contractor signed agreement based on union misrepresentations about scope of the agreement); *see also Jayeff Constr. Corp. v. Laborers' Int'l Union of N. Am.*, 2010 U.S. Dist. LEXIS 152164, at *4-5 (D.N.J. May 20, 2010) (denying summary judgment where employer "put forth sufficient evidence to suggest that there was fraud in the execution" of agreement and, thus, sufficient evidence for jury to "determine that the Funds are not entitled to any contributions."); *Iron Workers' Local No. 25 Pension Fund v. Nyeholt Steel, Inc.*, 976 F. Supp. 683, 690 (E.D. Mich. 1997) (finding fraud in the execution where a contractor assented to a project only arrangement, but mistakenly signed a SFA).[8]

The Funds' production of a second SFA from 1999, even taken at face value, does not necessarily establish an intent to be bound to an ongoing CBA; indeed, it might suggest the opposite. *Cf. Jayeff Constr. Corp.*, 2012 U.S. Dist. LEXIS 104872, at *10-11 (concluding that "[m]ultiple signed short form

---

[8] The CBA provides that "the Arbitrator shall have the authority to decide whether an Agreement exists, where that is in dispute." (2002 CBA, §21.20(c)). There is a pump-priming problem here. I do not believe this clause is sufficient to send the matter to an arbitrator where a party legitimately disputes whether it ever saw, heard about, or agreed to a CBA at all, and where it even disputes the scope of the SFA that supposedly incorporated the CBA.

agreements supports the Court's conclusion that the parties intended to enter project specific agreements," not statewide CBA for all projects).[9]

The Funds also pointed to certain employer contribution forms, which are relevant, but are far from dispositive at this stage. *See N.J. Reg'l Council of Carpenters*, 495 F. App'x at 234 (concluding that remittance form "alone, is not enough to bind a non-signatory employer to a CBA" and remittance forms at issue were limited to "payment of fringe benefits" for the particular employees listed in the form) (citing *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.*, 258 F.3d 645, 650 (7th Cir. 2001) ("[T]he monthly remittance reports accompanying these payments contained a declaration signed by the defendant . . . . Boilerplate it was, but it was entitled to some weight."); *Del Turco v. Speedwell Design*, 623 F. Supp. 2d 319, 346 (E.D.N.Y. 2009) (concluding that union could seek contributions from employer based on the existence of signed CBA *as well as* remittance reports))).

For these reasons, the Funds' motion does not warrant this Court's departing from the "presumption against reconsideration of interlocutory decisions." *In re Anthanassious*, 418 F. App'x at 96. Nor does it overcome the bedrock principle that arbitration will not be ordered unless and until the court resolves controlling issues of fact as to arbitrability. *See Guidotti*, 716 F.3d at 774 (When the issue of arbitrability is not apparent on the face of the complaint, "the motion to compel arbitration must be denied pending further development of the factual record.").

The Court, therefore, will exercise its discretion to deny the motion for reconsideration under the Local Rules, its inherent powers, or Rule 54(b).

---

[9]     Unlike the 2002 SFA, the 1999 SFA did not (1) provide the year or term length of any CBA then in effect, or (2) identify a successor agreement. That lack of specificity only heightens any dispute over whether this SFA "define[d] with sufficient specificity" the incorporated CBA document. *See Quinn*, 410 N.J. Super. at 535 (holding that retainer agreement did not "define with sufficient specificity" the plaintiff law firm's "Master Retainer," which plaintiff argued was incorporated by reference, where retainer agreement "merely states that the client will be bound 'by our standard billing practices and firm policies.'").

## V.    Conclusion

For the reasons stated above, the Court denies the Funds' request for an indicative ruling pursuant to Rule 62.1, for relief under Rule 60(b) motion, and for reconsideration under Rule 54(b). (DE 19).

An appropriate order follows.

Dated: August 14, 2019

*Kevin McNulty*

**KEVIN MCNULTY**
**United States District Judge**